HONORABLE RICHARD A. JONES

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

Christopher King, A/K/A KINGCAST, and JOHN NOVAK

        Plaintiffs,

  v.

LIQUOR AND CANNABIS BOARD OF THE STATE OF WASHINGTON; JANE RUSHFORD, Chair of the Liquor and Cannabis Board; RICK GARZA, Director of the Liquor and Cannabis Board; JAY INSLEE, Governor of Washington; ROBERT FERGUSON, Washington Attorney General; WILLIAM P. BARR, United States Attorney General; and OFFICE OF NATIONAL DRUG CONTROL POLICY

        Defendant.

No. 2:20-cv-01494-RAJ

ORDER

## I.  INTRODUCTION

This matter comes before the Court on four motions: (1) Plaintiffs' Motion for Injunctive Relief, Dkt. # 2; (2) Defendants' Motion to Dismiss Pursuant to FRCP 12(b)1,

ORDER – 1

2, Dkt. # 28; (3) Plaintiffs' Motion for Extension of Time to Respond to Motion to Dismiss, Dkt. # 29; and (4) Plaintiffs' Motion for Leave to File Second Amended Complaint, Dkt. # 71.  Having reviewed the parties' briefing, the remaining record, and relevant law, the Court **DENIES** Plaintiffs' Motion for Injunctive Relief, Dkt. # 2; **GRANTS** Plaintiffs' Motion for Extension of Time to Respond to Motion to Dismiss, Dkt. # 29; **GRANTS** Defendants' Motion to Dismiss, Dkt. # 28; and **DENIES** as moot Plaintiffs' Motion for Leave to File Second Amended Complaint, Dkt. # 71.

## II.   BACKGROUND

Plaintiff Christopher King, A/K/A Kingcast, is a recreational cannabis user and Plaintiff John Novack (collectively, "Plaintiffs") is a medical marijuana user.  Dkt. # 1 at 2.  Both individuals "routinely purchase cannabis products and pay[] the requisite sales tax to do so."  *Id.*  They are members of the Justice & Accountability in Government for Washington, a state lobbying group whose mission is "to change the culture and forge new laws, if necessary, to achieve equality of rights," among other things.  *Id.*  The group's stated purpose is "to educate persons as to their constitutional rights and to take all lawful actions to secure the exercise thereof."  *Id.*

On October 9, 2020, Plaintiffs filed a complaint against Defendants Washington State Liquor and Cannabis Board ("LCB"), Jane Rushford, Chair of LCB, and Rick Garza, Director of LCB.  Dkt. # 1.  The LCB is a state agency responsible for issuing licenses to producers, processors, and retailers of marijuana and adopting rules related to labeling, safety protocols, and methods of production, among others.  Dkt. # 28 at 2; RCW 69.50.342.  Plaintiffs allege that LCB officers cannot enforce criminal cannabis statutes because Washington state law limits the authority of LCB peace officers to the enforcement of liquor statutes.  Dkt. # 7 at 6 (citing RCW 66.44.010).  Plaintiffs also allege that LCB is acting *ultra vires* by allowing its agents, who do not have Basic Law Enforcement Academy ("BLEA") certification or training, to enforce criminal cannabis statutes.  Dkt. # 7 at 7 (citing RCW 10.93).  Plaintiffs further claim that "the LCB

ORDER – 2

imperils cannabis users by failing to conduct periodic testing to detect impurities, mold and other contaminants." *Id.* at 13. Plaintiffs request the following forms of relief:

    (1) Preliminary and permanent injunctions against non BLEA-trained personnel from assuming any enforcement authority;

    (2) Preliminary and permanent injunctions against pending enforcement cases brought by LCB agents who did not have BLEA training prior to the initiation of cases;

    (3) A recall of all criminal cases that were brought against anyone "under the artificially-enlarged LCB ambit such that any case involving a non BLEA-trained Agents be mooted, *nunc pro tunc*";

    (4) An order of prohibition preventing LCB from using the word "police" to describe its agents unless every LCB agent has undergone BLEA certification or superseding legislation confers such status to all LCB agents;

    (5) An order establishing "known and published testing regimen with respect to pesticides, herbicides, mold, fungus, and other "hot pot" issues that recklessly endanger the health of Washington's Cannibus consumers"; and

    (6) Costs and other relief as the Court may deem appropriate.

*Id.*

    The same day, Plaintiffs filed a motion for preliminary injunction seeking this relief. Dkt. # 2. A week later, Plaintiffs filed an amended complaint expanding its list of defendants to include Jay Inslee, Governor of Washington; Robert Ferguson, Washington State Attorney General; William P. Barr, United States Attorney General; and the Office of National Drug Control Policy ("ONDCP"). Dkt. # 7. Plaintiffs assert the same claims and seek the same relief requested in their original complaint. *Id.*

    On November 19, 2020, Defendants LCB, LCB Chair Rushford, LCB Director Garza, Washington Governor Inslee, and Washington State Attorney General Ferguson (collectively, "State Defendants") moved to dismiss the action for lack of jurisdiction

ORDER – 3

1  under Rule 12(b)(1) of the Federal Rules of Civil Procedure.  Dkt. # 28.  Plaintiffs failed
2  to timely respond by the deadline of December 7, 2020.
3      Almost two months later, on February 1, 2021, Plaintiffs filed a motion seeking
4  additional time to file a response, claiming that "they did not see any Notification of a
5  Motion to Dismiss."  Dkt. # 29.  State Defendants opposed an extension.  Dkt. # 34.

### III.   DISCUSSION

    The Court will address Plaintiffs' motion seeking preliminary injunction, Dkt. # 2, followed by Plaintiffs' motion for an extension of time to respond, Dkt. # 29.  The Court will then address Defendants' motion to dismiss, Dkt. # 28, and Plaintiffs' motion for leave to file a second amended complaint, Dkt. # 71.

**A.  Motion for Preliminary Injunction**

    Preliminary injunctive relief is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008).  As an extraordinary remedy, it is "never awarded as of right." *Id.*  The purpose of a preliminary injunction is to preserve the status quo and the rights of the parties until a final judgment on the merits can be rendered.  *See U.S. Philips Corp. v. KBC Bank N.V.*, 590 F.3d 1091, 1094 (9th Cir. 2010).  The legal standard for a preliminary injunction requires plaintiffs to show that they are (1) likely to succeed on the merits, (2) likely to suffer irreparable harm in the absence of preliminary relief, (3) the balance of equities tips in their favor, and (4) an injunction is in the public interest.  *See Stormans, Inc. v. Selecky*, 586 F.3d 1109, 1127 (9th Cir. 2009).

    The Ninth Circuit makes clear that a showing of immediate irreparable harm is essential for preliminary injunctive relief.  *See Caribbean Marine Servs. Co. v. Baldrige*, 844 F.2d 668, 674 (9th Cir. 1988) ("Speculative injury does not constitute irreparable injury sufficient to warrant granting a preliminary injunction.").  To obtain injunctive relief, "plaintiffs must establish that irreparable harm is *likely,* not just possible, in order to obtain a preliminary injunction." *Alliance for the Wild Rockies v. Cottrell,* 632 F.3d

ORDER – 4

1127, 1131 (9th Cir. 2011).

Here, Plaintiffs claim that "[t]o be subject to investigation, arrest and prosecution by persons or an entity not authorized to do so inherently involves Irreparable Harm to people whose entire professional reputations stand to be destroyed." Dkt. # 2 at 10. Plaintiffs' contend that injunctive relief "is necessary because without it Plaintiffs and the general populous [sic] are subject to the Due Process 5th/14th Amendment Concerns under 42 U.S.C § 1983." *Id.* at 9.

Although it is "well established that the deprivation of constitutional rights unquestionably constitutes irreparable injury," *Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012), the Court finds that Plaintiffs' hypothetical risk of injury does not. Plaintiffs' concern about possible harm to unidentified individuals in the general populace resulting from a hypothetical investigation, arrest, and prosecution is purely speculative. Plaintiffs have not alleged that they have been unlawfully detained or prosecuted by LCB officers nor established that they are at substantial risk of such detention or prosecution. Plaintiffs thus fail to establish a *likelihood* of irreparable harm or demonstrate a risk of *immediate* irreparable harm in the absence of preliminary injunctive relief.

In contrast, the Supreme Court in *Elrod v. Burns* concluded that the respondents had established injury for purposes of injunctive relief based on a deprivation of constitutional rights by showing that they had been discharged or threatened with discharge from their public service jobs based solely on their political affiliation or nonaffiliation. 427 U.S. 347, 349 (1976). The Supreme Court held that injunctive relief was appropriate because their "First Amendment interests were either threatened or in fact being impaired." *Id.* at 373. The violation of constitutional rights was an immediate harm: the respondents were being discharged or threatened with discharge at the time relief was sought. *Id*. This clearly demonstrates a likelihood of immediate of harm to the party seeking an injunction.

ORDER – 5

The Ninth Circuit in *Melendres v. Arpaio* similarly found that an allegation of constitutional rights violations constituted irreparable harm. 695 F.3d at 1002. The plaintiffs in *Melendres* had been unlawfully detained pursuant to a policy of racial profiling of Latino persons and practice of pretextually stopping and detaining Latino drivers. *Id.* at 994. The defendants, a sheriff and sheriff's office, represented that they had authority to detain individuals solely based on their immigration status even though it was not a criminal matter, and would continue to operate under that belief. *Id.* at 1002. Based on these representations, the district court concluded that the plaintiffs were likely to be stopped or unlawfully detained again. *Id.* This likelihood of injury was sufficient to warrant a preliminary injunction. *Id.* The Ninth Circuit affirmed. *Id.*

The allegations here are speculative; they do not establish a likelihood of immediate irreparable harm. A general concern about the possibility of constitutional rights violations does not warrant the extraordinary remedy of preliminary injunctive relief. Absent a showing of irreparable harm, the Court need not consider the other *Winter* factors. The Court therefore **DENIES** Plaintiffs' motion for preliminary injunction.

B.  **Plaintiffs' Motion for Continuance to Respond to Motion to Dismiss**

The Court considers Plaintiffs' Motion for Continuance as a motion for relief from a deadline under Local Rule 7(j) of the Western District of Washington. A motion for relief from a deadline "should, whenever possible, be filed sufficiently in advance of the deadline to allow the court to rule on the motion prior to the deadline." LCR 7(j). In the event of an unforeseen emergency, the parties are instructed to contact the adverse party, meet and confer regarding an extension, and file a stipulation with the court. *Id.* In the event of a true emergency, the parties are expected to stipulate to an extension. *Id.*

Here, the State Defendants filed a motion to dismiss on November 19, 2020. Dkt. # 28. The deadline for Plaintiffs to file a response was December 7, 2020. LCR 7(d)(3). Plaintiffs failed to file a response or a motion for relief from the deadline before the

ORDER – 6

deadline. Plaintiffs did not move for relief from the deadline until February 1, 2021, almost two months after the deadline had passed. Dkt. # 29. Defendants filed an opposition to the motion a week later. Dkt. # 34.

In their motion seeking an extension of time to file their response, Plaintiffs concede that there was no emergency situation precluding their timely filing of a response to Defendants' motion to dismiss. Dkt. # 35 at 2. Instead, they explain, "it was simply that Plaintiffs did not see the State Defendants' Motion in their emails and when Plaintiff King scanned down the ECF online after the Motion was filed he apparently had not gone all the way to the bottom and so he missed it." Dkt. # 35 at 2.

The Court finds this explanation untenable, particularly given the fact that Defendants informed Plaintiffs of their intent to file a motion to dismiss and met and conferred with Plaintiffs to discuss the merits prior to filing the motion. Dkt. # 28-1 ¶ 4; Dkt. # 34 at 2. Plaintiff King was then served with the motion to dismiss via e-filing, and Plaintiff Novack was served via First Class U.S. Mail. Dkt. # 34 at 2. Plaintiffs' failure to respond because they simply "did not see" it is inexcusable.

Nevertheless, the Court's preference for judgment on the merits will, in this instance, preclude denial for failure to timely respond or seek relief from a deadline. The Court will not, however, hesitate to strike or deny any untimely pleadings in the future. The Court **GRANTS** Plaintiffs' Motion for Continuance.

C.  **Defendants' Motion to Dismiss**

Defendants move to dismiss Plaintiffs' claims for lack of subject matter jurisdiction under Rule 12(b)(1) and personal jurisdiction under Rule 12(b)(2). Dkt. # 28 at 2. Defendants first argue that there is no subject matter jurisdiction because the amended complaint relies on the resolution of questions of state law, not federal law. *Id.* at 1-2. Alternatively, Defendants argue that the Eleventh Amendment or qualified immunity bars suit against all Defendants. *Id.* at 4. The Court will consider each argument in turn.

ORDER – 7

### 1. *Subject Matter Jurisdiction*

District courts have "original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. "The party asserting federal subject matter jurisdiction bears the burden of proving its existence." *Chandler v. State Farm Mut. Auto. Ins. Co.*, 598 F.3d 1115, 1122 (9th Cir. 2010). When reviewing a motion to dismiss, a district court "must accept all factual allegations of the complaint as true and draw all reasonable inferences in favor of the nonmoving party." *Bernhardt v. Cty. of Los Angeles*, 279 F.3d 862, 867 (9th Cir. 2002) (internal citation and quotations omitted). To determine whether a case arises under § 1331, a court must consider "if a well-pleaded complaint establishes either that federal law creates the cause of action or that the plaintiff's right to relief necessarily depends on resolution of a substantial question of federal law." *Empire Healthchoice Assur., Inc. v. McVeigh*, 547 U.S. 677, 690 (2006) (internal quotations and citation omitted).

Even accepting Plaintiffs' factual allegations as true, the Court finds that Plaintiffs have not met their burden to establish federal subject matter jurisdiction. As Defendants correctly note, Plaintiffs' claims and requested relief all depend on the interpretation of Washington state laws. Dkt. # 28 at 5. Plaintiffs allege that Defendants run afoul of state laws, specifically RCW 66.44.010, which provides enforcement authority only with respect to liquor regulations, and RCW 69.50.500, which excludes LCB officers from engaging in peace officer actions. Dkt. # 7 ¶¶ 14-21. State law, as opposed to federal law, "creates the cause[s] of action" asserted by Plaintiffs. *Cook Inlet Region, Inc. v. Rude*, 690 F.3d 1127, 1130 (9th Cir. 2012). Plaintiffs' conclusory allegations to the contrary are unavailing.

The Court must next determine whether the plaintiff's right to relief necessarily depends on resolution of a substantial question of federal law. 547 U.S. at 690. In their request for relief, Plaintiffs seek to enjoin behavior that, they assert, is not permitted under Washington law, to establish a testing regimen for cannabis products, and to ensure

ORDER – 8

that LCB officers are complying with the state laws. Dkt. # 7 at 17-18. Their right to relief wholly depends on resolution of Washington state law, not a "substantial question of federal law." 547 U.S. at 690. Failing to establish that federal law creates the cause of action or that Plaintiffs' right to relief "necessarily depends on resolution of a substantial question of federal law," Plaintiffs fail to demonstrate that the case invokes federal question jurisdiction under 28 U.S.C. § 1331.

Furthermore, the Court notes that Plaintiffs voluntarily dismissed federal Defendants United States Attorney General William Barr and the ONDCP on April 25, 2021. Dkt. # 56. The remaining defendants are a state agency and state officials. Plaintiffs' withdrawal of all federal defendants undermines Plaintiffs' argument that the "interplay between the State and Federal authorities clearly shows the presence of a Federal Questions pursuant to 28 USC § 1331." Dkt. # 32 at 2. In the absence of federal question jurisdiction under § 1331, the Court lacks subject matter jurisdiction over Plaintiffs' claims.

### 2. *Personal Jurisdiction*

Defendants contend that, in the alternative, the Court should dismiss all claims against Defendants because the Eleventh Amendment bars all claims against the LCB as a state agency and the named state officials in their official capacities. Dkt. # 28 at 6-7. The Eleventh Amendment limits the power of federal courts to decide certain claims against states. *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 119 (1984). It states that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI. In considering a motion to dismiss based on personal jurisdiction, a court must take all uncontroverted allegations in the complaint as true. *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800 (9th Cir. 2004).

Defendants correctly note that a state's immunity under the Eleventh Amendment

ORDER – 9

1    extends to its agencies and departments.  *See* 465 U.S. at 100.  Defendant LCB, a state
2    agency, created pursuant to RCW 66.08.012, is immune from suit in federal court unless
3    it consents to such an action.  *See id.*  Because the LCB has not waived its immunity, the
4    Court lacks jurisdiction over claims against the LCB.  The LCB is therefore dismissed.
5    Eleventh Amendment immunity is similarly extended to state officials who allegedly
6    violated state law in carrying out their official responsibilities.  *Id.* at 121.  Plaintiffs'
7    claims against the Governor of Washington, the Attorney General of Washington, and the
8    LCB's Chair and Executive Director in their official capacities are thereby dismissed.

9        With respect to Plaintiffs' claims against the named state officials in their personal
10   capacities, Defendants assert that they are entitled to qualified immunity.  Dkt. # 28 at 7-
11   8.  Qualified immunity "shields Government officials from liability for civil damages
12   insofar as their conduct does not violate clearly established statutory or constitutional
13   rights."  *Ashcroft v. Iqbal*, 556 U.S. 662, 672 (2009) (internal citation omitted).  To
14   determine whether state officials are entitled to qualified immunity, the Court must
15   consider whether the facts alleged by Plaintiffs make out a violation of a constitutional
16   right and whether the right at issue was "clearly established" at the time of the alleged
17   violation.  *Pearson v. Callahan*, 555 U.S. 223, 232 (2009).   The Court first considers
18   whether facts alleged by Plaintiffs, pursuant to Rule 12(b)(6), establish a violation of a
19   constitutional right.  *Id.*

20       In the amended complaint, Plaintiffs set forth their argument that LCB has no
21   authority to enforce cannabis, citing Washington statutes and failed legislative efforts of
22   the LCB to expand their authority.  Dkt. # 7 ¶¶ 14-22.  Plaintiffs then briefly describe the
23   observations of a declarant who would testify that his role as an LCB agent was
24   "essentially a fake cop."  *Id.* ¶¶ 23-24.  Next, Plaintiffs again describe historical efforts to
25   expand the authority of LCB agents—through repeated attempts to amend statutes—and
26   the limitations of current statutes.  *Id.* ¶¶ 25-48.  Plaintiffs then shift focus to describe
27   LCB's failure to conduct safety testing of cannabis products and highlight the dangers of

28   ORDER – 10

such a failure. *Id.* ¶¶ 49-54.  They briefly describe Plaintiff Novak's health issues, his reliance on medical marijuana, and the difficulties in obtaining information about different strains of marijuana due to changes in state law. *Id.* ¶¶ 55-62.  Finally, Plaintiffs note that ten legislators have "condemned the overall toxic and dysfunctional atmosphere at LCB," that the Washington State Attorney General "has successfully prosecuted a case involving ultra vires misconduct by the U.S. Post Office," and "the LCB has already publicly acknowledged the fact that they [sic] Agency lacks authority and that its Agents need to undergo BLEA training." *Id.* ¶¶ 64-66.

In these almost ten pages of factual allegations, however, Plaintiffs fail to allege any specific actions taken by the named state officials in their personal capacity that constitute a deprivation of constitutional rights.  They express concern about potential misuse of authority and *ultra vires* activity, but allege no facts demonstrating such activity.  The allegations are conclusory, speculative, and fail to demonstrate a violation of substantive and procedural due process violations under the Fifth and Fourteenth Amendment based on the conduct of these officials. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 545 (2007) (holding that "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of a cause of action's elements will not do.")  Absent factual allegations showing how the named state officials have deprived Plaintiffs of their constitutional rights, the Court finds that Defendant state officials are entitled to qualified immunity.  As such, claims against the remaining Defendants are dismissed.  Defendants' motion to dismiss is **GRANTED**.

Plaintiffs may, however, amend the complaint.  "Unless it is absolutely clear that no amendment can cure the defect . . . a *pro se* litigant is entitled to notice of the complaint's deficiencies and an opportunity to amend prior to dismissal of the action." *Lucas v. Dep't of Corr.*, 66 F.3d 245, 248 (9th Cir. 1995) (per curiam).  The Court therefore grants Plaintiffs **twenty-one (21) days** to file an amended complaint that states

ORDER – 11

a valid claim for relief consistent with this Order. If Plaintiffs fail to timely comply with this Order by filing an amended complaint that corrects the deficiencies noted above, the Court will dismiss this action without leave to amend. For these reasons, the Court **DENIES** as moot Plaintiffs' motion for leave to file a second amended complaint, Dkt. # 71.

## IV.   CONCLUSION

For the reasons stated above, the Court **ORDERS** as follows:

(1) Plaintiffs' motion for injunctive relief, Dkt. # 2, is **DENIED**;

(2) Defendants' motion to dismiss, Dkt. # 28, is **GRANTED.** Within 21 days of this Order, Plaintiffs may file an amended complaint consistent with this Order.

(3) Plaintiffs' motion for extension of time to respond, Dkt. # 29, is **GRANTED**;

(4) Plaintiffs' motion for leave to file a second amended complaint, Dkt. # 71, is **DENIED** as moot.

DATED this 8th day of September, 2021.

The Honorable Richard A. Jones
United States District Judge

ORDER – 12